**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 14, 2025**

# In the Court of Appeals of Georgia

A25A1289. NASH v. NASH.

WATKINS, Judge.

Tammy Nash ("Mother") and James Nash ("Father") are the parents and guardians/conservators of an adult ward, J. H. N. During their divorce proceedings, the parents agreed that Father would pay support to Mother for the care of J. H. N. until he was financially independent, which the parties acknowledged would likely be beyond the age of 30. Years later, Mother petitioned for a contempt citation, alleging that Father was in arrears on this support obligation. The trial court found Father in contempt for being in arrears, but not for the full amount claimed by Mother. The court additionally found that the parties had agreed to eliminate Father's support obligation in exchange for Father building Mother a bed and breakfast ("B & B"). We

granted Mother's application for discretionary review, and for the reasons contained herein, we vacate the trial court's order and remand the case with direction.

The record shows that the parties divorced in 2001. The trial court entered a Final Judgment and Decree that incorporated a settlement agreement reached by the parties. As part of that settlement agreement, the parties "acknowledge[d] that [J. H. N.] is special and has special needs because of his medical condition. Therefore, [Father] agree[d] to pay child support until [J. H. N.] is financially independent, and [Father] acknowledge[d] this could be beyond 30, and [Father] specifically agree[d] to this provision." The settlement agreement further provided that "[n]o modification or waiver of any of the terms of this Agreement shall be valid unless it is set forth in writing and signed by both of the parties." In 2002, when Father's income was reduced, the parties agreed to the entry of a Consent Order modifying the support award. In 2016, the parties were named the conservators and guardians of J. H. N. because the probate court found that he "lacks sufficient capacity to make or communicate significant responsible decisions concerning" both his health and safety and the management of his property. Neither party argues that J. H. N.'s capacity has improved since that time.

Mother subsequently approached Father, a builder by trade, about constructing a home that Mother would use to operate a B & B.[1] Although the parties contemplated that the construction would be a substitute for some of Father's support payments, they did not put their agreement in writing and they now disagree as to the nature of their agreement. Father contends that he agreed to construct the B &B in lieu of future biweekly support obligations for J. H. N. Mother claims that Father was in arrears at the time of this discussion and she told him "let's not worry about child support" while he was constructing the home. She contends that the agreement to forego support payments was limited to the time while Father was constructing the home, not on a permanent basis. While the parties did not put their agreement in writing as to support for J. H. N. at the time, they did enter a construction contract which valued the services Father was providing at $30,000. Father testified this document was created solely to obtain financing for the project and that he specified a cost that seemed reasonable, but that he never expected Mother to actually pay him.

After the construction was complete in March 2022, Father presented Mother with a Memorandum of Understanding ("MOU"). Mother testified that she only

---

[1] There is a dispute about whether Father agreed to construct a second home, but that dispute is not relevant to our analysis.

signed the MOU because Father was withholding the certificate of occupancy for the home until she signed, which Father denies. The MOU provided that the parties agreed that "in lieu of a fee for building the house that no further monetary support will be provided [by Father] for [J. H. N.]" Importantly, the MOU was not incorporated into any rulings by a court. Prior to the order on appeal, the most recent judicial order regarding Father's support obligation was the above mentioned consent order.

In 2023, Mother petitioned the trial court for a contempt citation, alleging that Father was tens of thousands of dollars in arrears for support. Following an evidentiary hearing, the trial court determined that the MOU validly modified Father's support obligation by eliminating biweekly support as of the day it was signed. The trial court further found that Father was in contempt for being $27,325 in arrears for child support owed until the MOU was executed in March 2022. We granted Mother's application for discretionary review, and she timely appealed.

1. In related claims of error , Mother argues that the trial court erred in relying on the MOU to modify Father's support obligation in a contempt proceeding. We agree.

4

Although J. H. N. is now an adult, "[t]he agreement of the parties which was incorporated in and made a part of the divorce decree is enforceable after the majority of [the] child."[2] This case arises from Mother's petition for contempt, not from a modification action filed by Father. Thus, as the appellate court,

> [w]e begin our analysis of this case by repeating the admonition that a modification action is the *exclusive* remedy for obtaining a provision [modifying] the child support award contained in a divorce judgment. While parties may enter into an agreement concerning modification of child support, the agreement becomes an *enforceable* agreement only when made the order of the court pursuant to OCGA § 19–6–19. Before a private agreement which includes child support may be incorporated into a court order, the trial court has an obligation to consider whether the agreed-upon support is sufficient based on the child's needs and the parents' ability to pay.[3]

Even when the parties have agreed to the original child support award, "[t]he respective rights of the parties after the entry of judgment are founded upon the

---

[2] *McClain v. McClain*, 235 Ga. 659, 661 (1) (221 SE2d 561) (1975).

[3] (Citations, punctuation, and footnote omitted; emphasis in original.) *Pearson v. Pearson*, 265 Ga. 100, 100-101 (454 SE2d 124) (1995).

judgment itself, and not upon the underlying agreement. Hence, any efforts to alter those rights must proceed by way of modification of the judgment[.]"[4]

Father argues that the parties were permitted to — and did — privately modify the support award pursuant to the language of the settlement agreement, which provides "[n]o modification or waiver of any of the terms of this Agreement shall be valid unless it is set forth in writing and signed by both of the parties." Father is correct that our Supreme Court has recognized certain circumstances where "parties may enter into a contractual agreement regarding modification of child support [ a]s long as the agreement is specific, does not contravene a statute, or violate public policy[;]"[5] but the language of the settlement agreement here does not qualify. The case relied upon by Father where modification was permitted without a court order contained language providing a precise way to calculate the upward change to a support obligation.[6] As our Supreme Court recognized in that case "[a]n agreement

---

[4] *Paul v. Paul*, 250 Ga. 54, 55 (296 SE2d 48) (1982).

[5] (Citations omitted.) *Kendrick v. Childers*, 267 Ga. 98 (1) (475 SE2d 604) (1996).

[6] See *Kendrick*, 267 Ga. at 98 (1) (holding that provision providing for "a definite percentage increase in child support payments [which] defines how the increase is to be calculated and paid" was specific enough to be enforceable). We note

6

to provide *additional support* as the child grows up does not contravene [the public policy that parents provide adequate support for their minor children], but rather it furthers the state's interest."[7] Father has pointed to no cases that permit the parties to contractually *reduce* a support obligation, particularly when the agreement contains no specificity as to what would trigger a reduction or how it would be calculated.[8]

Given that we hold the settlement agreement incorporated into the final decree did not authorize the parties to privately modify the support award, the execution of the MOU, whatever the circumstances, did not alter Father's support obligation. Father remained bound to pay support pursuant to the terms of the 2002 Consent

---

further that Father's reliance on *Daniel v. Daniel* is misplaced, as the Supreme Court of Georgia specifically stated that "the holding [there] is limited to the unusual combination of facts [that Court] had to consider. [The Court was] by no means authorizing blanket modification of divorce decrees by private agreement." 239 Ga. 466, 469 (2) (238 SE2d 108) (1977).

[7] (Emphasis supplied.) *Kendrick*, 267 Ga. at 99 (3).

[8] We recognize that J. H. N. has now reached the age of majority, but the settlement agreement incorporated into the divorce decree makes no distinction between pre-majority and post-majority support in light of J. H. N.'s medical condition. See *Katz v. Katz*, 258 Ga. 184, n.1 (366 SE2d 766) (1988) ("Appellee argues that 'child support' should be distinguished from 'contractual support,' the former being pre-majority and the latter post-majority support. However, this distinction is not made in the agreement where both pre-majority and post-majority support are called 'child support.'").

7

Order. Accordingly, the trial court's order eliminating Father's support obligation as of the signing of the MOU was an unauthorized modification in the context of a contempt action. We vacate the trial court's order with instruction to recalculate Father's past-due support obligation in light of our holding.[9]

2. In light of our holding in Division 1, we do not reach Mother's remaining claims of error.

*Judgment vacated and case remanded with direction. Brown, C. J., and Barnes, P. J., concur.*

---

[9] We express no opinion about what, if anything, Mother owes Father as a result of the construction of the B & B or what would be the appropriate resolution of a modification petition if one is subsequently filed by either party.